## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| VIRGINIA TRADER, | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * |
| WILLIAM SAVAGE, III, ET AL., | * |
| Defendants. | * |

Civil No. 25-975-BAH

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is a "Joint Motion to Dismiss Savage Poultry, Inc. ['Savage Poultry' or 'Debtor'] and VIP 401k Plan [the 'Plan'] With Prejudice From Above Captioned Civil Case Pursuant To Fed. R. Civ. P. 12(b)(1)" filed by Defendants Diamond State Meats LLC ("DSM") and William Savage, III ("Savage") (collectively "Movants" or "Defendants").  *See* ECF 69 (capitalization altered) (hereinafter the "motion to dismiss").  Also pending are competing motions to extend the discovery deadline.  Plaintiff Virginia Trader ("Plaintiff") moves to extend discovery for the sole purpose of conducting the Rule 30(b)(6) deposition of non-party Merrill Lynch.  ECF 76.  DSM opposes this motion, ECF 79,[1] and requests an extension of the discovery deadline in its entirety, ECF 78.  Savage joins these filings, ECF 80, and has filed his own motion to extend deadlines, ECF 81.  Plaintiff filed a reply regarding her motion, ECF 82, which was

---

[1] This opposition is somewhat confusingly filed and styled as an "answer," with line-by-line admissions and denials.

corrected by correspondence filed at ECF 86, and an opposition to DSM's motion, ECF 84. Savage filed a surreply. [2] ECF 83. DSM filed a reply regarding its motion. ECF 85.

The parties also filed separate status reports on June 18, 2026, indicating the existence of a discovery dispute. *See* ECF 88 (DSM and Savage's joint status report); ECF 89 (Plaintiff's status report). Further disputes have developed in the last couple days surrounding the scheduling of the Merrill Lynch deposition. *See* ECF 86 (Plaintiff's correspondence noting that the deposition had been scheduled for June 24 and indicating all parties' consent); ECF 87 (correspondence from defense counsel clarifying that they do *not* consent to the June 24 deposition absent an order from the Court but also noting that they are available that day); ECF 90 (June 23 paperless order permitting the deposition to proceed); ECF 91 (correspondence from Plaintiff noting that counsel had cancelled the deposition on June 22 having not heard from the Court); ECF 92 (DSM's response to ECF 91 objecting to the cancellation of the Merrill Lynch deposition); ECF 93 (Savage's response to ECF 91 detailing correspondence between counsel regarding the scheduling of the Merrill Lynch deposition).

The Court has reviewed all relevant filings and finds no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court addresses the motion to dismiss and the discovery issues in turn.

## I.       MOTION TO DISMISS

Movants seek to dismiss with prejudice Savage Poultry and the Plan pursuant to the automatic bankruptcy stay imposed by 11 U.S.C. § 362(a) as Savage Poultry is a bankruptcy debtor. *See* ECF 69, at 1. Movants argue that "[t]he Debtor and Plan should be dismissed with prejudice from this civil case, but with leave to file what Plaintiff may wish to pursue in the

---

[2] Surreplies are generally not permitted. *See* Loc. R. 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.").

Bankruptcy Court." *Id.* at 4. Movants also note that "[t]he Debtor nor the Plan has filed any answer in this civil case as a suggestion of stay was filed and the District Court has declared the stay in effect as to the Plan, which is really an asset and not a true party as it is a retirement plan." *Id.* at 3. Plaintiff opposes the motion to dismiss, noting that neither Savage Poultry nor the Plan have moved to dismiss themselves. *See* ECF 72, at 1. On the merits, Plaintiff argues that ERISA assets like the Plan are held in trust and therefore are not property of an employer's bankruptcy estate. *See id.* at 3–4. Plaintiff also contends that Movants "improperly conflate[ c]laims against the bankruptcy estate (such as unpaid employer contributions), with Ownership of Plan assets, which belong exclusively to plan participants." *Id.* at 4. As noted, the Court previously stayed this action as to both Savage Poultry, ECF 23, and the Plan, ECF 56.

The motion to dismiss will be denied for the simple reason that Movants, Savage and DSM, do not have standing to seek dismissal of the other defendants.[3] *See Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 585 n.10 (D. Md. 2016) (noting that employer defendant has "no standing to seek dismissal of the complaint against its non-moving employees"); *EEOC v. Brooks Run Min. Co., LLC*, No. CIV.A. 5:08-CV-00071, 2008 WL 2543545, at *2 (S.D. W. Va. June 23, 2008) (collecting cases for the proposition that "[i]t is generally accepted that parties lack standing to seek dismissal of parties other than themselves"). Indeed, as Movants did not file a reply regarding this motion, they did not respond to Plaintiff's argument that they may not seek relief as to non-moving co-defendants. Further, as the language of 11 U.S.C. § 362 contemplates, Savage Poultry itself requested a stay, not dismissal, of the claims against it when it notified the Court of the bankruptcy petition. *See* ECF 11 ("suggestion of stay" advising that due to the filing of a

---

[3] That counsel for Savage Poultry and DSM is the same is of no moment. The motion to dismiss was brought only by DSM and Savage. *See* ECF 69, at 1.

3

bankruptcy petition, "the commencement or continuation of any proscribed action including property of the estate is stayed").

To the extent Movants argue the Plan is not a "true party" because it is a retirement plan, the Court notes that the caselaw supports the opposite proposition—retirement plans are one of a limited number of proper defendants to ERISA actions. *See McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004) ("Although the Fourth Circuit has not published a decision that expressly holds who is a proper defendant in an action for benefits under Section 1132(a)(1)(B), the Fourth Circuit appears to be aligned with those circuits that permit a plaintiff to bring an action to recover benefits under Section 1132(a)(1)(B) *against the pension plan itself as an entity* and any fiduciaries who control the administration of the pension plan." (emphasis added) (citing *Gluth v. Wal–Mart Stores, Inc.,* 117 F.3d 1413, 1997 WL 368625, at *6 (4th Cir. July 3, 1997) (Table))); *Valderrama v. Honeywell TSI Aerospace Servs.*, No. RWT 09CV2114, 2010 WL 2802132, at *6 (D. Md. July 14, 2010) ("A suit to recover ERISA benefits may be brought *only against the plan*, the plan administrator, or a plan fiduciary." (emphasis added) (citing *Gluth,* 1997 WL 368625, at *6; *Ankney v. Metro. Life Ins. Co.,* 438 F. Supp. 2d 566, 574 (D. Md. 2006); *Howell v. Truck Drivers & Helpers Local Union No. 355,* Civ. No. WDQ-07-0989, 2008 WL 6742575, at *3 (D. Md. Apr. 19, 2008))); *see also Sawyer v. Potash Corp. of Saskatchewan (Potashcorp)*, 417 F. Supp. 2d 730, 737 (E.D.N.C. 2006), *aff'd sub nom. Sawyer v. Potash Corp. of Saskatchewan*, 223 F. App'x 217 (4th Cir. 2007). To the extent Movants suggest that Plaintiff has willfully violated the automatic bankruptcy stay of 11 U.S.C. § 362, ECF 69, at 3, that too is an argument that must be made by the injured party, not by Movants on behalf of a co-defendant.

Movants' motion to dismiss their co-defendants will be denied.  The case remains stayed as to Savage Poultry and the Plan.[4]

## II.    DISCOVERY ISSUES

### A.  Motions to Extend Time

Despite what one might infer from the fact that the parties have submitted over a dozen filings on the subject, the discovery deadline dispute is relatively straightforward.  By the current scheduling order deadlines, discovery closed on June 18, 2026, and the dispositive pretrial motions deadline is July 19, 2026.  *See* ECF 60.  Everyone agrees the discovery deadline should be extended, at least in part.  Plaintiff initially argued that the discovery deadline should be extended to June 30, 2026, only to accommodate the Rule 30(b)(6) deposition of a Merrill Lynch representative.  *See* ECF 76.  Plaintiff later filed a letter noting that "Merrill Lynch and the Defendants have agreed to the date of June 24, 2026, from 9:00 a.m. to 12:00 noon (if the discovery period is extended)." ECF 86.  Defendants' response to that letter indicated they did *not* consent, but it appeared to the Court that they were able to attend the deposition should the Court extend the deadline.  *See* ECF 87, at 1 ("Calendars are clear for Defendants provided but Defendants await the resolution of the Court to move forward.").  For this reason, by paperless order, on June 23, 2026, the Court permitted the Rule 30(b)(6) deposition of the Merrill Lynch designee, which was scheduled for June 24, pending this memorandum and order resolving the rest of the disputes.  ECF 90.  The day prior, however, Plaintiff's counsel had unilaterally cancelled the deposition having

---

[4] In her opposition, Plaintiff argues that the Plan is not included in the bankruptcy estate, which would suggest that staying this action as to the Plan may not the proper course of action.  *See* ECF 72, at 4.  The Court previously stayed this action as to the Plan after requesting the parties' positions on the matter and after Plaintiff "appear[ed] to concede that the stay applies to the Plan[.]" ECF 56, at 2.  Should Plaintiff seek a lifting of the stay, she may move to do so in a properly supported motion.

not heard from the Court on the pending extension requests. ECF 91. Defense counsel has each filed letters now objecting to the unilateral cancellation of the Merrill Lynch deposition, which had been set for today. ECFs 92 and 93. They also indicate an intent to reschedule the deposition during the last two weeks of July. *See id.*

The question now pending is whether Defendants' request for a blanket two-month extension of the discovery deadline and related deadlines is warranted to accommodate follow-up discovery after Plaintiff's deposition, which occurred on June 18 (the last day of discovery per the governing scheduling order) and the rescheduling of the Merrill Lynch deposition. Plaintiff argues that there is not good cause to extend the discovery deadline because Defendants have not pursued discovery diligently as they have not propounded written discovery on Plaintiff and they chose to set Plaintiff's deposition for the close of discovery. *See* ECF 84, at 1–2. In reply, DSM pointed out that Plaintiff noticed Savage's deposition for June 17. ECF 85, at 3.

Under Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Given that everyone agrees that some sort of extension is warranted, that two parties' depositions had been set for so late in the discovery period, that the Merrill Lynch deposition must now be rescheduled, and in an effort to avoid future disputes over case deadlines, the Court finds good cause to extend the discovery deadline by one month—to July 31, 2026, with the other case deadlines extended accordingly. The Court does not expect to grant further extensions.

The Court notes that the parties do not appear to have strictly complied with the Court's Local Rules requiring conference of counsel before seeking extensions of time. *See* Loc. R. 105.9. This rule is meant to preserve judicial economy and streamline resolution in the face of heavy caseloads and focus disputes raised in contested motions to only those disputes that truly cannot

be reconciled without the Court's intervention.  The filings, some ridden with errors and typos reflecting that the respective author took little to no time to contemplate whether the filing was appropriate or helpful,  also contain competing and repetitive accusations of bad faith against opposing counsel.  "The Court expects . . . all counsel to conduct themselves in a professional and courteous manner in connection with all matters pending before the Court."  Loc. R. 606.  While civility is a worthy practice unto itself, it also serves the goal of preserving judicial economy and the parties' resources.  Moreover, each time the parties bring a new dispute before the Court, resolution of *all* pending disputes has been delayed accordingly.  While the Court understands that litigation can understandably lead to heightened emotions, counsel must remain mindful of this obligation going forward, at the very least to prevent unnecessary motions practice and superfluous filings.[5]  To be crystal clear, the filing of letters chronicling every perceived error by opposing counsel accomplishes nothing beyond wasting precious time; the Court expects it to end.  If not, the Court will consider appropriate sanctions to deter such behavior in the future.

### B.  Discovery Dispute

The parties' respective status reports also raise a discovery dispute that arose during Plaintiff's deposition on June 18 concerning questions about "damages, restitution and attorneys' fees and costs."  ECF 88, at 2.  It is not entirely clear to the Court which questions prompted the dispute, but defense counsel appears to wish to continue Plaintiff's deposition to probe the "areas

---

[5] For example, counsel for Diamond State Meats, LLC devotes several paragraphs to detail disagreement with the process Plaintiff is employing to re-schedule the Merrill Lynch deposition. ECF 92-1, at 2. The Court expects counsel to be able to re-schedule the Merrill Lynch deposition within the now-extended discovery window without involvement of the Court.  The Court also notes that while Plaintiff's counsel should not have unilaterally cancelled the deposition because the motions were still pending, defense counsel's objections to the last-minute cancellation, ECFs 92 and 93, are hard to swallow given that the last the Court had heard, defense counsel had objected to conducting the deposition on that date despite their stated availability, *see* ECF 87 (correcting Plaintiff's representation and expressing that "Defendants have not consented to the deposition").

of damages, restitution, fees, costs and retainer particulars." *Id.* at 4.  Plaintiff explains that the disputed area concerns "the terms of the attorney client agreement and fees and expenses incurred in this litigation."  ECF 89, at 1.  At the deposition, "Plaintiff stated that her counsel has been invoicing her but was instructed not to answer the questions about the terms of the attorney client agreement and the amount of fees and expenses incurred." *Id.*

DSM and Savage are correct that "the attorney-client privilege does not extend to billing records and expense reports" where such records contain only "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) (brackets removed) (citing *In re Grand Jury Proceedings,* 33 F.3d 342, 353–54 (4th Cir. 1994) and quoting *Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir. 1992)).

The Court does not have the deposition record before it, but the issue appears to be one of relevance, not of privilege.  *See* ECF 89, at 2–4 (framing counsel's objection as concerning relevance).  The question here is not necessarily that the terms of the fee agreement between Plaintiff and her counsel are covered by attorney-client privilege, but whether such questions are relevant to the claims under Fed. R. Civ. P. 26(b).  *See Younger v. Safeco Ins. Co. of Am.*, No. 1:20-CV-67, 2021 WL 5402535, at *7–9 (N.D. W. Va. Sept. 8, 2021) (explaining when the attorney-client privilege would preclude disclosure of a fee agreement versus when such disclosure is irrelevant and ultimately finding the dollar amount in fees and costs expended in the underlying litigation not discoverable as not relevant).[6]

---

[6] The party asserting attorney-client privilege bears the burden of justifying its assertion. *See United States v. (Under Seal)*, 748 F.2d 871, 876 (4th Cir. 1984).  As Plaintiff does not appear to have actually asserted the privilege, *see* ECF 89, at 2–4, she cannot have met that burden on the record before the Court.

The Fourth Circuit cases cited by DSM and Savage are inapposite as they do not discuss when a plaintiff's fee agreement with her counsel is relevant to the claims at issue. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) (addressing whether defendants were "improperly prevented the discovery of certain *relevant* information by asserting attorney-client and work product privileges," thereby assuming the sought-after information to be relevant (emphasis added)); *In re Grand Jury Subpoena*, 204 F.3d 516, 523 (4th Cir. 2000) (discussing only attorney-client privilege, not relevance); *In re Grand Jury Matter (Special Grand Jury Narcotics Dec. Term, 1988, Motion to Quash Subpoena)*, 926 F.2d 348, 351–52 (4th Cir. 1991) (concluding that a fee arrangement was not protected by attorney-client privilege in criminal grand jury proceedings and that its production did not violate the Sixth Amendment, but not evaluating relevance).

Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "[R]elevance under Rule 26 must be determined by reference to the substantive law which forms the basis of their claims and defenses." *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1184 (4th Cir. 1995). Motions for attorney's fees and costs are typically governed by Fed. R. Civ. P. 54(d). The rule directs that such a motion should be filed within fourteen days of entry of judgment. Fed. R. Civ. P. 54(d)(2)(B). And as Plaintiff's counsel notes, the Local Rules direct the procedure by which counsel are encouraged and required to submit fee statements to opposing counsel. *See* App. B.1(c)–(f), Loc. R. (D. Md. 2025).

The courts that have considered the question of "whether pretrial discovery regarding a potential award of attorneys' fees is proper . . . 'have almost universally held that when a statute provides attorneys' fees for a prevailing party, fee arrangements and expenses are not discoverable until liability is established.'" *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 310 (D. Nev. 2019)

(quoting *Am. Civil Rights Union v. Martinez-Rivera*, Case No. 2:14-cv-026-AM-CW, 2015 WL 13650010, at *5 (W.D. Tex. Sept. 10, 2015)) (collecting cases), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, No. 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020); *see also Younger*, 2021 WL 5402535, at *7–9  (discussing attorney-client privilege and relevance and ultimately finding the dollar amount in fees and costs expended in the underlying litigation not discoverable as not relevant).   Plaintiff's fee agreement with her counsel is not relevant to establishing liability on her ERISA claims as the terms of her fee agreement with her counsel do not tend to make liability more or less probable and are not of consequence in determining liability. *See* Fed. R. Evid. 401.  Should Plaintiff obtain "some degree of success on the merits," she would be entitled to reasonable attorney's fees under 29 U.S.C. § 1132(g)(1).  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (citing *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694 (1983)).   But "while not privileged and potentially relevant at a later point in the proceedings, [P]laintiff's fee arrangement with her attorney is not currently relevant." *Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009) (citing *Banks v. Office of the Senate Sergeant–at–Arms and Doorkeeper,* 222 F.R.D. 7, 14 (D.D.C. 2004)) (denying request to compel production of retainer agreement without prejudice).[7]

It is true that "Federal Rule of Civil Procedure 30(c)(2) makes clear that a witness's counsel may object [at a deposition] on the basis of relevance for the record but 'the examination still

---

[7] A fee agreement itself is also not necessarily determinative of the amount of reasonable attorney's fees  recoverable under the fee-shifting provision. *See Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (noting that in the context of fee-shifting statutes, "[w]hat a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992) (noting that in fee-shifting cases, recoverable reasonable attorney's fees are calculated using the typical lodestar approach, not by adopting the fee amount dictated by a contingency fee agreement if such amount is not reasonable).

proceeds' and 'the testimony is taken.'"[8] *Mera v. Garland*, Civ. No. 20-2127 (BAH), 2022 WL 20274878, at \*2 (D.D.C. June 21, 2022) (declining to "allow plaintiff to avoid answering questions based on an objection that . . . would not give license to refuse to answer").  At the same time, however, rescheduling a deposition for the sole purpose of pursuing irrelevant questioning would be a waste of the parties' resources (and only serve to increase the amount of attorney's fees potentially at issue).  The Court therefore will not order that Plaintiff's deposition be reconvened for this purpose.  *See Layani v. Ouazana*, Civ. No. 20-420-SAG, 2024 WL 4056979, at \*2 (D. Md. Sept. 5, 2024) (Abelson, J.) (concluding that improper instructions "not to answer did not unfairly impede Defendants from seeking discovery about matters relevant to the claims and defenses" and declining to order the deponent to sit for another deposition and to order other requested sanctions); *cf. Mera*, 2022 WL 20274878, at \*2 (declining to order the plaintiff to sit for an additional deposition only to remedy improper relevance objections and instructions not to answer, but permitting defendants to seek answers regarding attorney's fees in written discovery).

DSM and Savage allude to a desire for discovery on Plaintiff's request for damages and restitution.  ECF 89, at 2.  It is not clear to the Court whether any issues on these topics arose at Plaintiff's deposition, and, regardless, the dispute has not been adequately raised in the parties' joint status reports.  *See* ECFs 88 and 89.  To the extent any dispute remains, counsel are directed to the Court's informal discovery dispute procedure.  ECF 58.  The Court expects that counsel will be able to reschedule the Merrill Lynch deposition by the end of July without the Court's handholding.

---

[8] The rule provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  But, as noted *supra* note 5, Plaintiff has not established the applicability of the attorney-client privilege, and the record currently before the Court does not indicate that Plaintiff's objection concerns the privilege as opposed to relevance.

### III.    CONCLUSION AND ORDER

Accordingly, it is this 24th day of June, 2026, by the United States District Court for the District of Maryland, hereby ORDERED that:

(1) DSM and Savage's motion to dismiss co-defendants Savage Poultry and the Plan, ECF 69, is DENIED;

(2) Plaintiff's motion to extend the discovery deadline, ECF 76, is GRANTED;

(3) DSM's and Savage's motions to extend the discovery deadline and related deadlines, ECFs 78 and 81, are GRANTED IN PART AND DENIED IN PART;

(4) The discovery dispute raised in the status reports, ECFs 88 and 89, is RESOLVED as described herein;

(5) The following deadlines govern:

| | |
|---|---|
| July 31, 2026: | Discovery deadline; submission of status report |
| August 7, 2026: | Requests for admission |
| August 28, 2026: | Dispositive pretrial motions deadline |

(6) The parties are advised that the Court does not expect to grant further extensions.


_____/s/_____
Brendan A. Hurson
United States District Judge

12